IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JFJ Toys, Inc, d/b/a D&L Co.
and Fred Ramirez
    v. : Civil Action No. DKC 13-793

Toys "R" Us-Delaware, Inc.,
and John Does 1-10

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark infringement case is the motion for leave to file a third-party complaint filed by Defendant Toys "R" Us-Delaware, Inc. ("TRU"). (ECF No. 23). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion will be granted.

I. **Background**

The Plaintiffs in this case, JFJ Toys, Inc. d/b/a D&L Company ("D&L") and Fred Ramirez ("Mr. Ramirez") brought a trademark infringement action against TRU and John Does # 1-10. The facts as alleged in the amended complaint are as follows. Mr. Ramirez is the sole owner of D&L. The dispute arises from TRU's sale of toy rockets under the names STOMP BLAST ROCKET and ZOMP ROCKETZ, which Plaintiffs allege infringe on their

federally registered STOMP and STOMP ROCKET marks. Plaintiffs assert that TRU's STOMP BLAST ROCKET and ZOMP ROCKETZ air rocket toys are nearly identical to Plaintiffs' STOMP ROCKET brand air rocket toys and that "Defendant's use of Plaintiffs' Trademarks in connection with the manufacturing, offering, advertising, sale and distribution of the STOMP BLAST ROCKET and ZOMP ROCKETZ is likely to confuse, mislead or deceive consumers as to the origin or source of Plaintiffs' goods." (*Id.* ¶¶ 2-4).[1] Plaintiffs contend that "John Does 1-10 are additional, unidentified companies who are manufacturers or distributors, in the U.S. and/or throughout the world, of the STOMPBLAST ROCKET and ZOMP ROCKETZ." (*Id.* ¶ 11).[2] In the amended complaint, Plaintiffs assert that they sent a cease and desist letter to TRU on May 3, 2012 and a follow-up letter on June 6, 2012. TRU's counsel subsequently stated in a telephone message that "TRU's vendor of the STOMP BLAST ROCKET, Manley Toy Quest, would be in contact." (*Id.* ¶ 34). Plaintiffs assert that they never heard from Manley Toy Quest.

---

[1] Plaintiffs also allege that TRU has been a long-time customer of D&L's. Specifically, Plaintiffs assert that TRU has been purchasing from Plaintiffs their STOMP ROCKET brand air rocket toys in large volumes since 1997. (ECF No. 17 ¶ 47).

[2] Plaintiffs aver that on or about June 10, 2013, "counsel for D&L noticed that the product image used on Defendant's website in connection with [the] sale of the ZOMP ROCKETZ changed from the ZOMP ROCKETZ to the ZOOM ROCKETZ." (ECF No. 17 ¶ 44). Plaintiffs believe that TRU continues to advertise and sell the product under the mark ZOMP ROCKETZ, however.

2

Plaintiffs filed a complaint against TRU on March 14, 2013 and later amended the complaint on June 12, 2013. (ECF No. 17). Plaintiffs assert claims for trademark infringement and false designation of origin under the Lanham Act, trademark dilution, common law trademark infringement, unfair trade practices under Md. Code Com. Law § 13-101 *et seq.*, common law unfair competition, and unjust enrichment. (*See id.*). TRU answered the amended complaint on July 1, 2013. (ECF No. 18). The undersigned originally issued a scheduling order on May 23, 2013 (ECF No. 14), but later granted the parties' joint motion to modify the scheduling order (ECF No. 21). The new scheduling order set October 25, 2013 as the deadline for moving for joinder of additional parties and amendment of pleadings. (ECF No. 21, at 2). On October 25, 2013, TRU moved for leave to file a third-party complaint against Manley Toys, Ltd. ("Manley"). (ECF Nos. 23 & 24). Plaintiffs opposed the motion on November 8, 2013 (ECF No. 28), and TRU replied (ECF No. 29). Plaintiffs also moved to stay the scheduling order pending resolution of the instant motion, which the undersigned granted.

## II. Analysis

A defendant may implead a third-party who "may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a)(1). A defendant may freely serve a summons and complaint on a third-party within fourteen (14) days after serving the

original answer; thereafter, the defendant must notify all parties and seek leave to implead a third-party, as TRU has done here. *Id.* District courts have broad discretion to grant or deny a motion under Rule 14. *Noland Co. v. Graver Tank & Mfg. Co.*, 301 F.2d 43, 50 (4th Cir. 1962). As recently noted in *Certain Underwriters at Lloyd's, London v. R.J. Wilson & Assocs., Ltd.*, Civil No. CCB-11-1809, 2012 WL 2945489, at *3 (D.Md. July 17, 2012):

> "Impleader [under Rule 14] will be liberally allowed, if it will prevent duplication of suits based on closely related matters." *Dishong v. Peabody Corp.*, 219 F.R.D. 382, 385 (E.D.Va.2003) (*citing Noland Co.*, 301 F.2d at 50). However, impleader may be denied where joining the third party "will introduce unrelated issues and unduly complicate the original suit" or "might prejudice the original plaintiff or the third-party defendant." *Id*.
>
> In addition, impleader is proper "only when a right to relief exists under the applicable substantive law." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 (3d ed.2010). Thus, the court may consider "whether the third-party complaint states a claim upon which relief can be granted." *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y.2003) (citations omitted). *But see Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 55 (S.D.N.Y.1991) (noting that "there is some question as to whether plaintiff may attack the merits of the proposed third-party claims at this stage of the proceedings").

In the motion for leave to implead Manley, TRU argues that Manley designs, manufactures and sells the STOMP BLAST ROCKET

4

toy. (ECF No. 24, at 2). TRU asserts that the STOMP BLAST ROCKET toy was manufactured by Manley and sold to TRU pursuant to the Master Purchase Order Agreement ("Master Agreement"), dated December 9, 2004, which expressly states that Manley will defend and indemnify TRU against any trademark infringement claims. Specifically, Manley electronically accepted the terms of the Master Agreement, which includes the following provision:

> [Manley] shall defend, indemnify and hold harmless [TRU], its affiliates, and their respective officers, directors, members, shareholders, employees, agents, representatives, assigns and successors [ ] and shall hold them harmless against any and all alleged, actual or threatened liabilities, damages, claims, suits, actions . . . arising out of or alleged to have arisen from a breach of any of the representations, warranties or obligations of [Manley] under this Agreement (including any related act or omission by [Manley]), or in connection with the possession, handling, use, resale, labeling or return of the Merchandise . . . *including but not limited to, patent, copyright and trademark infringement actions . . . [Manley] shall undertake and conduct the defense of any suit so brought against [TRU] by reason of any of the foregoing, whether meritorious or not.*

(ECF No. 23-1, at 17) (emphasis added). Thus, TRU contends that "Manley has a duty to defend and indemnify TRU against any lawsuit that includes allegations of trademark infringement in connection with goods Manley has supplied to TRU, including the STOMP BLAST ROCKET toy." (ECF No. 24, at 2). TRU asserts that

5

it contacted Manley several times by written correspondence to remind Manley of its obligation to defend and indemnify TRU with respect to Plaintiffs' claims against it. (*See* ECF Nos. 23-1 & 23-2). On April 5, 2013, Manley's attorneys sent a letter to TRU's counsel, informing that "Manley will not be defending or indemnifying Toys "R" Us in light of its material contractual breaches and conduct with respect to the Aleo matter. Toys "R" Us should accordingly proceed to defend itself."[3] (ECF No. 23-1, at 53). TRU also asserts that it "does not have the benefit of the required level of insurance that Manley agreed to provide in the Master Agreement with which to further protect itself against a judgment in this action." (ECF No. 23-1, at 5). TRU states that on May 15, 2012, "Manley and its excess insurer, Colony National Insurance Company ('Colony'), agreed to the rescission of insurance policies procured for the benefit of TRU as part of a confidential settlement agreement that was entered into to resolve litigation brought by Colony against Manley." (*Id.* at 5-6). Due to Manley's refusal to honor what TRU believes are its contractual obligations that impact the underlying litigation with Plaintiffs, TRU asserts six counts against Manley in the proposed third-party complaint for breach of contract (count I), breach of the implied covenant of good

---

[3] The *Aleo* matter appears to be a reference to a separate dispute between Manley and TRU.

faith and fair dealing (count II), express indemnification (count IV), implied indemnification (count V), and contribution (count VI). (*See* ECF No. 23-1, at 1-11). TRU also seeks a declaratory judgment regarding Manley's duty to defend, indemnify and hold TRU harmless under the Master Agreement (count III).

### A. Breach of Contract Claims

Plaintiffs argue that the breach of contract claims in TRU's proposed third-party complaint are not derivative of the underlying lawsuit. Specifically, Plaintiffs assert that "Defendant's contract claims against Manley are precisely the kind of separate and independent claims on which impleader cannot be based." (ECF No. 28, at 7). Plaintiffs contend that TRU's contract claims against Manley involve a completely different set of facts than Plaintiffs' trademark infringement action against TRU and raise unrelated issues such as Manley's duty to carry insurance.

Rule 14(a) requires that the third party's liability be secondary or derivative to the defendant's liability to the original plaintiff. *AIG Europe Ltd. v. Gen. System, Inc.*, Civil Action No. RDB-13-0216, 2013 WL 6654382, at *2 (D.Md. Dec. 16, 2013). Notably, such derivative liability usually arises in cases involving indemnification, joint tortfeasors, or contribution. *See id.* ("Typically, proper third party claims

involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable. Absent such derivative liability, a third party claim must fail."); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 (3[d] ed. 2010) ("The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory."). "Impleader will be liberally allowed, if it will prevent duplication of suits based on closely related matters." *Dishong*, 219 F.R.D. at 385 (*citing Noland Co.*, 301 F.2d at 50). As Judge Nickerson explained in *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, Civil Action No. WMN-09-2499, 2010 WL 761201, at *4 (D.Md. Mar. 2, 2010):

> Courts have also cautioned that, "a third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, 'It was him, not me.' Such claim is viable only where a proposed third party plaintiff says, . . . 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part of anything I must pay plaintiff.'" [*citing Watergate Landmark Condominium Unit Ownwers' Assoc. v. Wiss, Janey, Elstner Assoc., Inc.*, 117 F.R.D. 576, 578 (E.D.Va. 1987).] Furthermore, 'Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim

> arises out of the same general set of facts as the main claim.' *Laughlin v. Dell Fin. Servs., L.P.*, 465 F.Supp.2d 563, 567 (D.S.C. 2006); *see also Watergate Landmark*, 117 F.R.D. at 578 ("[Rule 14] cannot be used as a device to bring into a controversy matters which merely happen to have some relationship to the original action.").

TRU meets the standard for impleading a third-party defendant. TRU does not attempt to deflect blame for trademark infringement onto Manley. As TRU points out, it "does not seek to transfer liability to Manley; TRU's claim is that if it is liable to Plaintiffs, then [Manley] . . . must reimburse TRU for all or part of anything it must pay to Plaintiffs." (ECF No. 29, at 4). TRU's breach of contract and breach of the implied covenant of good faith and fair dealing claims against Manley and request for a declaratory judgment are premised on Manley's refusal to indemnify TRU for Plaintiffs' trademark infringement claims against TRU. *See, e.g., Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240-41 (S.D.N.Y. 2004) (video store sued for copyright infringement could implead distributor as third party defendant because if store was liable to plaintiff for infringement it would have a breach of contract claim against distributor). Allowing TRU to file the third-party complaint will achieve the primary objective of Rule 14: "avoiding circuity while systematically dispos[ing] of all related matters into one litigation." *MNC Commercial, Div. of*

9

*MNC Credit Corp. v. Park Jensen Co., Inc.*, Civ. A. No. HAR-90-1055, 1991 WL 74137, at *6 (D.Md. May 6, 1991); *Johns Hopkins Univ. v. Hutton*, 40 F.R.D. 338, 346 (D.Md. 1966) ("[o]ne of the primary objectives of third-party procedure under Fed.R.Civ.P. 14 is to avoid circuity and multiplicity of actions and needless and expensive duplication of work."). The undersigned finds persuasive TRU's argument that "the focal point of TRU's claims is Manley's contract-related duty to defend and indemnify TRU against Plaintiffs' allegations of trademark infringement – the very heart of the underlying action." (ECF No. 29, at 3).

Moreover, although Plaintiffs argue that impleader will introduce factual issues regarding Manley that are unrelated to Plaintiffs' trademark claims, Plaintiffs have themselves injected Manley into this litigation. Specifically, as TRU points out, Plaintiffs' first set of document requests includes, *inter alia*, a request that TRU provide:

> [a]ll [d]ocuments and [c]ommunications between [TRU] and any [p]erson (*including Manley Toys*) that [r]elate to [y]our acquisition and sale of the Infringing STOMP BLAST ROCKET Toy including the design, development, manufacture, branding, *purchase order*, distribution, [a]dvertising, and/or sale of the [i]nfringing STOMP BLAST ROCKET.

(ECF No. 29-1, at 12) (emphases added). Similarly, Plaintiffs' first set of interrogatories includes a request that TRU "[d]escribe Manley Toys' role in the manufacture and sale of the

10

Infringing STOMP BLAST ROCKET Toy, including its role in the development, design and name selection of Infringing STOMP BLAST ROCKET Toy." (ECF No. 29-2, at 13); *cf. Dishong*, 219 F.R.D. at 386 (denying the proposed impleader of a third party because "[t]he issues raised by the third-party complaint [we]re unrelated to those presented in plaintiff's complaint, and *almost all* of the evidence that would be relevant to the third-party claim has no connection to the original claims.") (emphasis added). Here, much like in *Certain Underwriters*, 2012 WL 2945489, at *4, at least some of the evidence that would be relevant to defendants' third-party claim "*does* have a connection to Plaintiffs' original claims and could be at issue in discovery whether or not this motion is granted." (emphasis in original). Indeed, Plaintiffs' own requests for information regarding Manley's possible involvement with the allegedly infringing product demonstrates this point and undermines their position that any claims by TRU against Manley are unrelated to the underlying action. *See Certain Underwriters*, 2012 WL 2945489, at *4 ("whether or not the court grants this motion, discovery in this case may overlap with discovery in the [third-party case].").

Plaintiffs argue that TRU's third-party claims against Manley require proof of issues unrelated to the instant lawsuit such as its duty to insure. A similar argument was rejected in

11

*Certain Underwriters*, 2012 WL 2945489, at *4, where plaintiff argued that "the tortious interference claim in the proposed third-party complaint would require trial on scienter elements not at issue in [plaintiff's] original suit." Judge Blake rejected plaintiff's argument, holding that:

> While this may be true, the tortious in[ter]ference claim would also require evidence of many of the same facts that *will* be at issue in this case. Defendants have signaled their intent to raise NiiS's actions as part of their defense in the original suit. Thus, even if the court does not grant the motion for leave to file a third-party complaint, discovery in the present case would likely address questions regarding the exact nature of NiiS's actions, whether the actions were improper, and whether they caused damages to either defendants or to [plaintiff].

The above logic is equally persuasive in the context of this case, as evidenced by Plaintiffs' discovery requests. Accordingly, TRU's breaches of contract claims in the proposed third-party complaint provide a sound basis for impleading Manley.

### B. Indemnification and Contribution Claims

Plaintiffs contend that "Defendant's claims for indemnification and contribution for Plaintiffs' federal trademark infringement causes of action may not be asserted as a matter of law." (ECF No. 28, at 5). Specifically, Plaintiffs assert that "[b]ecause neither the Lanham Act nor the federal

12

trademark law expressly provides a right to indemnification or contribution, no right of action for contribution and indemnification may be implied therefrom." As noted above, impleader is proper "only when a right to relief exists under the applicable substantive law." *Certain Underwriters*, 2012 WL 2945489, at *3 (*citing* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 (3ᵈ ed. 2010)). Thus, the court may consider "whether the third-party complaint states a claim upon which relief can be granted." *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003). Plaintiffs cite *Zero Tolerance Entertainment, Inc. v. Ferguson*, 254 F.R.D. 123 (C.D.Cal. 2008), for the proposition that no right to indemnification or contribution exists under the Lanham Act. Plaintiffs are correct to note that several courts outside of this district have held that indemnification and contribution claims are unavailable for Lanham Act violations. *Id.* at 127; *see also Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 16 (2ᵈ Cir. 1988) ("No express right of contribution exists under the Lanham Act, and [the district court] correctly concluded that it was inappropriate to imply such a right."); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 69 F.Supp.2d 678, 681 (M.D.Pa. 1999) ("there is no right to contribution for violations of the Lanham Act[,]" and "there is no federal common law right to indemnification and Congress has

13

not explicitly or implicitly provided such a right to indemnification under . . . the Lanham Act. Thus, indemnification with respect to violations of federal law is foreclosed."); *Elsevier, Inc. v. Comprehensive Microfilm & Scanning Services, Inc.*, No. 3:10-cv-2513, 2012 WL 727943, at *4 (M.D.Pa. Mar. 6, 2012) ("[t]he Lanham Act was not designed to protect trademark violators by allowing them to mitigate the effects of their wrongdoing by invoking equitable principles in an effort to distribute blame.").

Judge Blake's analysis in *Certain Underwriters*, 2012 WL 2945489, is instructive on the issue of whether to allow TRU to implead Manley where some of the claims in the proposed third-party complaint may not be viable. In *Certain Underwriters*, the proposed third-party complaint included claims for indemnity, contribution, and tortious interference. Similar to Plaintiffs here, plaintiff in *Certain Underwriters* argued that the court should deny defendants' motion for leave to file a third-party complaint because defendants would be barred under Maryland law from bringing actions for indemnity or contribution against the third-party defendant. In rejecting plaintiff's argument and granting the motion for leave to file a third-party complaint, Judge Blake reasoned:

> Underwriters does not argue that the claim for tortious interference would be similarly barred. As a result, at least as to the

14

> claim for tortious interference, impleader under these circumstances properly raises a claim under substantive law, will not introduce unrelated issues, will not unduly complicate the original suit, and will not prejudice [plaintiff] or [third-party defendant, NiiS]. *The court need not, therefore, reach the question of whether defendants' claims for indemnification or contribution are properly pleaded. Defendants' motion [for leave to file a third-party complaint] may be granted on the basis of the claim for tortious interference alone.*

2012 WL 2945489, at *4 (emphasis added). In so concluding, Judge Blake also noted that "the court does not hold that each or any of the three counts necessarily states a claim under the pleading standards of Rule 12(b)(6). . . . [the proposed third-party defendant], once served, may bring a motion to dismiss pursuant to Rule 12." *Id.; see also* Fed.R.Civ.P. 14(a)(2)(A) (noting person served with a third-party complaint may "assert any defense against the third-party plaintiff's claim under Rule 12."). The same logic applies here. Although Plaintiffs have posited other reasons for rejecting TRU's breach of contract claims, they have not argued that the breach of contract claims would be barred under Maryland law. Accordingly, at this stage, the undersigned need not reach the question of whether the indemnification or contribution claims against Manley – premised

on federal and state law trademark infringement claims – would ultimately prevail.[4]

C. **Undue Complication and Prejudice**

Lastly, Plaintiffs argue that "[i]mpleading Manley would seriously complicate and delay this action, activity that would substantially prejudice Plaintiffs." (ECF No. 28, at 8). "Impleader should be denied if joining the third-party would unduly complicate the original suit, introduce unrelated issues, or if the third-party complaint is obviously unmeritorious." *Haak Motors, LLC v. Arangio*, Civil No. WDQ-09-1887, 2010 WL 4117034, at *2 (D.Md. Oct. 19, 2010). Relevant factors in determining whether to grant leave to implead include whether: "(1) the defendant deliberately delayed or was derelict in filing the motion; (2) impleading the third-party would delay or unduly complicate the trial; (3) impleading would prejudice the

---

[4] Plaintiffs also argue that "[t]o the extent that Defendant seeks contribution and indemnity based on Plaintiffs' unfair competition and unfair trade practices claims or state contribution or indemnification statutes, those claims rise and fall with Plaintiffs' substantially congruent federal trademark claims." (ECF No. 28, at 6). TRU asserts that indemnification and contribution may be available for Plaintiffs' trademark claims that arise under state law and points to holdings from other jurisdictions that support this position. *See, e.g., Elsevier*, 2012 WL 727943, at *4 ("[p]laintiffs' claim against Defendants for unfair competition arising under state common law permits Defendants to state claims for contribution and indemnification against the [t]hird-[p]arty [d]efendants."). For the reasons cited *supra*, at this stage, the undersigned need not determine the merits of TRU's indemnification and contribution claims against Manley – under either federal or state trademark law.

16

non-movant and third-party defendant; (4) the third-party complaint states a claim upon which relief can be granted; and (5) the issues in the third-party complaint are similar to those in the original complaint." *Xquisite Transp., LLC v. Travelers Indem. Co.*, Civil No. WDQ-08-2905, 2009 WL 3246960, at *2 (D.Md. Oct. 2, 2009).

Here, TRU timely moved for leave to implead Manley as prescribed by the amended scheduling order. (*See* ECF No. 21). Plaintiffs point to the fact that Manley is a Hong Kong corporation, stating that "[t]o add to this litigation a non-cooperative party that is located on the other side of the world, and whose relevant evidence and witnesses are housed nearly 10,000 miles away, will surely put a strain on Plaintiffs' – and the Court's – time and energy and materially complicate the discovery process." (ECF No. 28, at 8). Plaintiffs assert that impleading a foreign corporation will involve a complicated service of process and raise personal jurisdiction issues that may delay trial in the underlying matter. Plaintiffs also contend that the Master Agreement between TRU and Manley includes a forum-selection clause and identifies New Jersey as the governing law, which may require the undersigned to apply New Jersey law to resolve the third-party action. (*See* ECF No. 23-1, at 20).

17

In terms of Plaintiffs' personal jurisdiction argument, although this argument may be meritorious, deferring ruling on the issue is appropriate until the third-party defendant over whom personal jurisdiction is asserted raises it. To the extent Plaintiffs believe that interpretation of New Jersey law – if it is later determined that New Jersey law in fact controls any issues in dispute – would complicate the matter, courts routinely interpret laws from other jurisdictions. *See, e.g., Chubb & Son v. C&C Complete Servs., LLC*, 919 F.Supp.2d 666, 676 (D.Md. Jan. 23, 2013) (applying New Jersey law in interpreting a contract).[5] Plaintiffs also argue that "there are waves of bad blood between Defendant and Manley – blood which would certainly wash into and upset the present litigation, causing delay, complicating issues, and prejudicing Plaintiffs." (ECF No. 28, at 9). But as TRU points out, it is not surprising that a prospective third-party plaintiff and third-party defendant would disagree about liability.

---

[5] Moreover, in the recent case of *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S.Ct. 568 (2013), the Supreme Court of the United States clarified how district courts are to treat forum selection clauses. The Supreme Court noted that venue is not "improper" simply because the suit was filed in a court other than that specified in the forum selection clause. Thus, at this juncture, it is not appropriate to deny TRU's motion for leave to file a third-party complaint based on the forum selection clause in the Master Agreement between TRU and Manley.

Moreover, the underlying litigation is still in the relatively early stages. On November 6, 2013, Plaintiffs moved to stay the scheduling order pending resolution of the instant motion, and the undersigned granted the motion the next day. (ECF Nos. 26 & 27). No dispositive motions have yet been filed. *See, e.g., Xquisite Transp., LLC*, 2009 WL 3246960, at *2-3 (granting motion for leave to file third-party complaint where defendant argued that additional costs in time and discovery requests are inherent in all impleaders); *cf. DTM Research, L.L.C. v. AT&T Corp.*, 179 F.R.D. 161, 162 (D.Md. 1998) (denying motion for leave to file a third-party complaint where the proposed impleader "would entail significant delay, entailing a new wave of discovery (undoubtedly attended by the same sort of discovery disputes that have characterized this litigation) and almost certainly another round of dispositive motions."); *Handlos v. Litton Indus., Inc.*, 51 F.R.D. 300 (E.D.Wis. 1970) (refusing to allow impleader where trial would already not occur until two and a half years after commencement of suit and the underlying events were already more than three years old). Much like the plaintiff in *Xquisite Transp., LLC*, Plaintiffs here have not shown that the third-party claims will "unduly complicate" this case. TRU's claims against Manley arise from Plaintiffs' trademark infringement claims against TRU. On balance, the interest in promoting efficiency by trying related

19

claims outweighs the potential danger of delay or complication. *See, e.g., Certain Underwriters*, 2012 WL 2945489, at *4 ("to the extent that impleading NiiS here prevents *yet another* lawsuit from being filed, judicial economy will be served and prejudice to [plaintiff] limited") (emphasis in original).

## III. Conclusion

For the foregoing reasons, TRU's motion to file a third-party complaint against Manley will be granted. A separate order will follow.

>                    /s/
> DEBORAH K. CHASANOW
> United States District Judge